**NYE, Admr., et al., Appellants,**

v.

**KEMP et al., Appellees.**

[Cite as *Nye v. Kemp* (1994), 97 Ohio App.3d 130.]

Court of Appeals of Ohio,
Franklin County.

No. 94APE05-726.

Decided Dec. 13, 1994.

*Robert D. Cohen;  Lamkin, Van Eman, Trimble, Beals & Rourke* and *Thomas W. Trimble,* for appellants.

*Crabbe, Brown, Jones, Potts & Schmidt, Charles E. Brown* and *Michael R. Henry;  Day, Cook & Gallagher* and *David L. Day;  Frost & Maddox Co., L.P.A., Robert E. Frost* and *Mark A. Reynolds,* for appellees.

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of Norma Nye, administrator, appellant, from the May 2, 1994 judgment entry of the Franklin County Court of Common Pleas which directed a verdict in favor of defendants Pentecostal Assemblies of the World, Inc. ("PAW") and Ohio District Council of Pentecostal Churches, Inc. ("ODC").  The facts of this case are as follows:  On January 4,

1991, Leroy Kemp, Jr., an Elder of PAW, collided with a police cruiser driven by Robin H. Nye and in which William Gloeckner was a passenger. As a result of the accident, Officer Nye died and Officer Gloeckner was seriously injured. Appellant, Norma Nye, administrator of the estate of Robin H. Nye, and William and Genna Gloeckner (hereinafter "appellants") brought suit against appellees, PAW, ODC, Kemp and other defendants who were dismissed from the suit before the trial in this matter. By agreed entry filed April 15, 1994, the parties agreed that the sole issue for trial would be whether PAW and ODC were legally liable to appellants for the actions of Kemp on the date of the accident. On September 6, 1994, an entry was filed with this court dismissing PAW from this action pursuant to a settlement agreement. Thus, the only defendant before this court is ODC.

On appeal, appellants assert the following assignments of error:

"I. The trial court abused its discretion and erred in granting defendants' motion for a directed verdict as reasonable minds may have reached different conclusions as to inferences to be drawn from the evidence, thus requiring submission to and consideration by the jury.

"II. The trial court erred in determining that ecclesiastical control was not sufficient to establish the existence of *respondeat superior* between defendant Kemp and the other named defendants."

The trial court found that there was no right of control over Kemp by ODC and/or PAW. Therefore, the trial court found that ODC and PAW could not be held liable, under a *respondeat superior* theory, for the actions of Kemp. Accordingly, the trial court granted the motion for a directed verdict in favor of PAW and ODC. Civ.R. 50(A)(4) provides as follows:

"When Granted on the Evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

This involves the testing of the legal sufficiency of the evidence to take the case to the jury and is a question of law. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 696, 586 N.E.2d 141, 142. The trial court must assume the truth of the evidence essential to the claim, including all reasonable inferences from that evidence, and it may not weigh that evidence or try the credibility of the witnesses. *Jenkins v. Morgan* (1988), 57 Ohio App.3d 40, 566 N.E.2d 1244.

■ We will address appellants' assignments of error together, as they are interrelated. The issue before this court is whether ODC is liable, under the doctrine of *respondeat superior*. *Respondeat superior* liability attaches only where the work performed is that of a master, and the servant is subject to the control of the master in performing the work. See *Boch v. New York Life Ins. Co.* (1964), 175 Ohio St. 458, 26 O.O.2d 47, 196 N.E.2d 90. In *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 175, 24 OBR 403, 406, 494 N.E.2d 1091, 1095, the Supreme Court enumerated several factors to consider, including whether or not the individual's performance is in the course of the principal's business rather than in some ancillary capacity; whether or not the individual receives any compensation from the principal; and whether or not the principal supplied the tools and the place of work in the normal course of the relationship. In *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 884, the Supreme Court articulated further factors as follows:

" * * * The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts. * * * "

■ This "right to control" is essential to determine the existence of an agency relationship. A similar case, pertaining to ecclesiastical control, is *Brillhart v. Scheier* (1988), 243 Kan. 591, 758 P.2d 219. In that case, the Supreme Court of Kansas set forth the following analysis:

"In contrast to an 'employee' under the respondeat superior doctrine, an 'independent contractor' is one who contracts to do certain work according to his own methods, without being subject to the control of his employer, except as to the result of his work. An independent contractor therefore represents the will of his employer only in the result, and not as to the means in which it is accomplished. * * *

"The primary test to determine whether one is an employee or an independent contractor is the 'right to control' test. The employer need not *actually* control the work of the employee; he need only have the *right* to control the work." (Citations omitted and emphasis *sic*.) *Id.*, 243 Kan. at 594, 758 P.2d at 222.

The Supreme Court of Kansas held that ecclesiastical control was not sufficient to hold the diocese liable, insofar as the diocese had no control over the day-to-day activities of a parish pastor. The court specifically noted that "[a]lthough a diocese sets a pastor's salary and has the power to eventually remove him from office, the pastor retains significant control even in these areas. Moreover, the

pastor is clearly in control of his parish. * * *" *Id.,* 243 Kan. at 596, 758 P.2d at 223.

In the instant action, even less ecclesiastical control is exercised over Elder Kemp, insofar as he is not paid a salary by either ODC or PAW. A review of the record also demonstrates the following facts relevant to a *Bostic* analysis: Kemp was the chairman for the Southern Ohio District Brotherhood ("SODB"). The SODB is one of three Brotherhood Districts in Ohio, and there are approximately forty-six churches in the southern district. There are more than one hundred churches in ODC. ODC is not part of the operations of the organization of PAW; rather, it is part of the spiritual structure. However, sixty percent of PAW's budget comes from contributions from the councils, including ODC.

The individual members of individual churches take part in brotherhoods like SODB for fellowship. These individuals also contribute to their churches, which in turn contribute to ODC, which in turn contributes to PAW. Appellants argue that SODB seeks to further the purpose of PAW and ODC by bringing souls to Christ and by tithing and donating "love offerings," which in turn financially support ODC and PAW.

It is further undisputed that Kemp has been ordained as an Elder in PAW. It is also undisputed that PAW could choose to revoke Kemp's license to be an ordained minister, if it found that Kemp was not living the moral life required of an Elder. Appellants argue that the financial connection between SODB, ODC and PAW, as well as the ecclesiastical control that PAW could exercise over Kemp, are sufficient to demonstrate the "right to control." Therefore, appellants argue that the question of agency and *respondeat superior* liability should have been taken to the jury.

However, the position Kemp held as the chairman of SODB had nothing to do with being an Elder. Furthermore, this was an elected position. In other words, Kemp was not appointed to this position by any ecclesiastical authority. Additionally, it is undisputed that it was preferred that the chairman be a lay person, rather than an Elder. Kemp also testified that he was not an employee of SODB, ODC, or PAW. ODC and PAW had no control over SODB. ODC and PAW had no right to control where the brotherhood meetings were held, when they were held, who held them, topics that were covered, advertising of the meeting, or any other aspect of these brotherhood meetings. ODC and PAW further had nothing to do with the fliers that Kemp was distributing at the time of the accident. Kemp controlled the distribution of the fliers. Kemp made the initial decision to deliver the fliers in the first place. Kemp also selected who would receive them and when he would deliver them.

Elder Kemp had no salary, no set hours, no vacation or sick leave, and no bosses or supervisors in his role as chairman of SODB. Furthermore, Elder Kemp supplied his own vehicle and was not reimbursed for gas or mileage.

Hampton, who was the administrator of PAW, testified that losing credentials had to do with the minister's spiritual activity and moral standing and had no bearing whatsoever on what he does as chairman of SODB. Hampton also testified that Kemp's title as Elder had nothing to do with SODB. He further testified that Kemp controlled his own activity, and was not employed by ODC or PAW, and further stated that, if the title of Elder was taken away from Kemp, he could still serve as the chairman of SODB.

Bishop Smith testified that ODC and PAW were not involved in any way in the daily operations of SODB. He further testified that SODB had its own budget and that ODC could not vote on who was elected as chairman for SODB. Bishop Smith also testified that ODC and PAW required nothing of the Brotherhood and that donations of money were not a requirement.

It is crucial to note that appellants focus on whether or not Kemp's activities financially benefit ODC, and thus benefit PAW. However, whether or not an activity benefits another is not the test for agency; rather, the crucial element is that of control. Again Hampton testified that no one had the right to tell Kemp how to perform his function or position as chairman of SODB. Bishop Smith testified that ODC had no authority to do anything to a leader of SODB and that ODC was powerless to do anything about members who were not contributing financially. The only authority that ODC would have over Elder Kemp would be to revoke his license if he was violating the basic tenants of PAW. Again, the testimony was unanimous that Kemp's role as an Elder had nothing to do with his role as chairman of SODB.

In the instant action, it is clear that Kemp was not receiving any compensation as an employee. Furthermore, it is also clear that ODC did not supply Kemp with the car or the fliers or any of the tools necessary to complete the promotion of this fellowship meeting. ODC did not control the details and quality of Kemp's work, the hours that Kemp worked, the route that he was travelling, or his length of employment. Accordingly, pursuant to the factors set forth in *Bostic, supra,* this court agrees that reasonable minds could only conclude that Kemp was not the agent of either ODC or PAW. Accordingly, the trial court properly found that ODC and PAW were not liable for the acts of Kemp.

For all of the above reasons, appellants' first and second assignments of error are hereby overruled, and the judgment of the Franklin County Court of

Common Pleas is hereby affirmed.   Costs to be assessed equally to the respective parties.

*Judgment affirmed.*

PEGGY BRYANT and DESHLER, JJ., concur.