JOURNAL ENTRY AND OPINION
These consolidated appeals arose from the personal injury claims of plaintiffs-appellees Matthew and Leslie Bean against Christopher Read, Read's employer, defendant-appellee Structural Grouting Systems Excavating, Inc. ("SGS"), and the Beans' own un/underinsured motorist insurance carrier, defendant-appellant State Farm Mutual Automobile Insurance Co. ("State Farm"). Judge Lillian J. Green granted summary judgment in favor of SGS on its contention that Read was not within the course and scope of his employment at the time of the collision, he had no permission to operate the company truck and lacked a valid operator's license. State Farm contends the issues of course and scope, authorization and ratification were material facts in dispute and summary judgment was inappropriate.
We dismiss the Beans' appeal (No. 74819) under the authority of App.R. 18(C). On State Farm's appeal (No. 74784), we disagree and affirm.
On May 31, 1996, Bean was operating his car westbound on Edgerton Road near its intersection with St. Route 94 in the city of North Royalton. Read, driving an SGS truck, was southbound on St. Route 94 and, purportedly, entered Edgerton in violation of his duty to stop and yield the right of way causing a collision resulting in injury to Bean.
On January 27, 1997, the Beans filed a complaint against Read and SGS asserting claims for damages arising out of the negligence of Read and respondeat superior against SGS. An amended complaint filed June 4, 1997, reiterated the claims against Read and SGS, asserted a claim for uninsured/underinsured motorist benefits against new party defendant State Farm, Bean's automobile insurance carrier, and demanded joint and several liability against all defendants. Read failed to answer the complaint. SGS answered, denied Read was operating its truck within the course and scope of his employment and/or agency relationship, and asserted a claim for contribution from Read should it be liable to the Beans. State Farm answered, claimed that Bean was solely negligent or contributorily negligent, and asserted a claim against both Read and SGS for indemnification should it pay money damages to the Beans. State Farm based its claim upon the negligence of Read and both respondeat superior and negligent entrustment against SGS.
From the record we learn the underlying information. Read was hired by SGS as a laborer in 1995. At that time Read advised SGS he did not have an Ohio drivers license. He was laid off and then returned to SGS in early 1996. On the day of the accident, Read and Roger Fink, a heavy equipment operator and Read's supervisor, were present on a construction site in Broadview Heights excavating a basement. Read had completed a specific assignment and would be idle until Fink had completed further work and, Fink claimed, Read asked whether he could use the SGS truck assigned to Fink to get his lunch.
Fink stated he generally left the truck keys in the ignition. It was his normal practice to get permission from the SGS office before letting a co-worker use the truck. He would, however, let a co-worker drive the truck to the SGS office for parts. He said Read had told him sometime during the previous few months that he was now a licensed driver so, Fink claimed, he told Read to call the SGS office, using the radio in the truck, to ask for permission. Fink could not remember whether Read had told him that the office gave him permission or whether Read just drove away. In any event, Fink assumed that when Read left, he had obtained permission from the office. Fink also agreed that there could have been other occasions when Read drove the truck but he could not recall any.
On March 6, 1998, SGS filed a motion for summary judgment addressing only the claims against SGS. It argued Read was not authorized to operate any company vehicle, that Read's trip on May 31, 1996, was not within the course and scope of his employment, and that Read never had an agency relationship with SGS. In his affidavit, Michael Glaser, company president, stated that SGS had a written policy of allowing its employees to use company vehicles only for its business or for commuting:
 Treasury Regulations * * * provide * * * that our vehicles, which are provided to you in connection with our trade or business, not be used for personal purposes other than commuting and de minimis personal use.
 In order that we may comply with the above-stated regulations, we are issuing a written policy that employees may not use company vehicles for personal purposes other than commuting.
Glaser attached Read's signed acknowledgment upon which, in the space for his Ohio Drivers License number, Read wrote the words "Non Driver." Glaser also attached a copy of a police report dated June 4, 1996 which indicates the following:
 At the above time and date I receive a report on station from Michael Glaser (01). He states that he is the owner of Structural Grouting System Exc., Inc. and is working around Royalwood. On 6-3-96, an employee, Christopher Read (02) had taken his company truck, a 87 Ford P/U (PF311N) without his permission. Glaser said that he knew that Read was under suspension and gave him no permission to drive his truck and also that he had never before given Read permission to drive any of his vehicles. Read took the truck and had gotten into an accident in N. Royalton. Glaser stated that he wanted to have this report on file for insurance purposes and did not wish to file any charges on Read.
Based upon Glaser's affidavit and supporting documents, SGS argued that, because Read mislead Fink and did not have permission to drive the vehicle, his acts were outside the scope of his employment relationship. On that basis it could not be liable to the Beans or State Farm under the doctrine of respondeat superior.
The Beans did not oppose the motion. State Farm countered that questions of fact existed over whether Read's operation of the truck and the accident were foreseeable, whether Fink had the authority to give Read permission to drive and whether Read acted within the course and scope of his employment.
On June 1, 1998, the judge granted SGS's motion for summary judgment in the following journal entry and order:
 Motion of Defendant Structural Grouting Systems Excavating [,] Inc[.] for Summary Judgment is granted. See Finley v. Schuelt
(1982), 8 Ohio App.3d 38; Calhoun v. Middletown Coca-Cola Bottling Co. (1974), 43 Ohio App.2d 10, 13. Case remains pending against Deft Read and State Farm Mutual Ins. Co. PARTIAL.
On June 4, 1998, the Beans dismissed their claims against the "above defendant" under Civ.R. 41(A)(1). On June 10, 1998, the judge signed a journal entry "Case voluntarily dismissed w/o prej. Final."
On its appeal, State Farm raises one assignment of error:
 THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT-APPELLEE SGS' MOTION FOR SUMMARY JUDGMENT AS THE DEFENDANT-APPELLEE FAILED TO SHOW THAT NO GENUINE ISSUE OF MATERIAL FACT REMAINS TO BE LITIGATED.
State Farm first argues that the cases cited by Judge Greene do not apply to the facts of the present action. State Farm further claims that the facts asserted by SGS show that questions of material fact exist regarding whether Read had implied consent to operate the truck in the course and scope of employment.
In response, SGS argues that the Read acknowledged in writing that he would not drive during his employment and, therefore, it had no reason to foresee that he would take a vehicle without permission. Moreover, it also had no reason to foresee that Read would drive one of their vehicles because it hired Read as a laborer, not a driver. Finally, Read's act of taking the truck without permission on a route past many food outlets was a criminal act which relieves it of liability. That SGS did not seek to prosecute him for his actions, SGS claims, does not make his action any less a crime.
This court reviews the grant of summary judgment de novo,
without deference to the ruling of the judge, and applies the standard set forth in Civ.R. 56(C). Druso v. Bank One of Columbus
(1997), 124 Ohio App.3d 125, 131. A party may move for summary judgment if evidentiary material shows both that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); Zivich v.Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-370. The moving party bears the initial burden of supporting its motion by specifically pointing to something in the record that comports with the evidentiary material listed in Civ.R. 56(C). Dresher v.Burt (1996), 75 Ohio St.3d 280, 292-293, 298. However, the movant cannot satisfy this burden through conclusory assertions that the non-moving party has no evidence to support its case. Dresher,75 Ohio St.3d at 293. Once the movant has satisfied this burden, the non-moving party assumes a reciprocal burden of showing that a genuine issue of material fact exists for trial. Civ.R. 56(E);Dresher, 75 Ohio St.3d at 293. The non-moving party must satisfy this reciprocal burden by pointing to the same type of evidentiary material of record as listed under Civ.R. 56(C). Civ.R. 56(E);Dresher, 75 Ohio St.3d at 293. If the non-moving party fails to satisfy this burden, the court then may render summary judgment in favor of the movant if such judgment is appropriate. Civ.R. 56(E). Summary judgment is only appropriate when, after viewing the evidence in a light most favorable to the non-moving party, reasonable minds can come to one conclusion and that conclusion is adverse to the non-moving party. Civ.R. 56(C). Temple,50 Ohio St.2d at 327; Druso, 124 Ohio App.3d at 131.
"`A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.'" Osborne v. Lyles (1992), 63 Ohio St.3d 326, 329-330,587 N.E.2d 825, quoting Restatment of Law 2d, Agency (1958) 481, Section 219(1). Respondeat superior liability attaches only where the work performed is that of the master, and the servant is subject to the master's control in performing the master's work.Rockwell v. Ullom (Sept. 3, 1998), Cuyahoga App. No. 73961, citingBoch v. New York Life Ins. Co. (1964), 175 Ohio St. 458,196 N.E.2d 90, paragraph one of the syllabus; Nye v. Kemp
(1994), 97 Ohio App.3d 130, 133, 646 N.E.2d 262. "Conduct is within the scope of a servant's employment if it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master." Rockwell, supra. "To sever the servant from the scope of his employment, the act complained of must be such a divergence from his regular duties that its very character severs the relationship of master and servant." Posin v. A.B.C. MotorCourt Hotel (1976), 45 Ohio St.2d 271, 278, 344 N.E.2d 334. An employer is not liable under the doctrine of respondeat superior where an employee's act of driving an automobile does not render a specific benefit upon the employer. Rockwell, supra, citing Faberv. Matelweld, Inc. (1992), 89 Ohio App.3d 794, 798, 627 N.E.2d 642.
SGS fulfilled its burden, under Dresher v. Burt (1996),75 Ohio St.3d 280, by presenting affidavit and deposition evidence supporting the contention that: (a) Read was a laborer, not a driver, and not the agent of SGS; (b) Read's stated purpose for driving the truck on May 31, 1996, was to obtain his lunch; (c) he did not have the permission of SGS or Fink to drive the truck on that day; and (d) Read's operation of the truck was not within the course and scope of his employment and, indeed, outside the course and scope of employment.
State Farm did not put forth any evidence tending to show that Read's act of taking the truck to lunch rendered a specific benefit upon SGS. It suggests, however, that under Lightning Rod MutualInsurance v. Chatman (1990), 64 Ohio App.3d 781, the presence of a two-way radio in the SGS truck raises question of Read being "on call," and SGS' ability to order him back to the job site. InLightning Rod, however, the employee was hired as a truck driver
"on call" for emergency business at all times and required to drive his truck to lunch as close to the work site as possible. State Farm then suggests that Read might have had Fink's permission to operate the truck and utilizes Cincinnati Transit, Inc. v. Tapley
(1971), 28 Ohio App.2d 26 for the proposition that operating a commercial vehicle bearing the employer's name, with permission, creates a rebuttable presumption that it is being operated within the course and scope of employment. Cincinnati involved an appeal from a jury verdict where the employer failed to introduce any evidence whatsoever and argued to the reviewing court the plaintiff had failed to prove respondeat superior. State Farm additionally submits that Read had implied authority to drive, that it was foreseeable to SGS that he would drive and it was a jury question whether Fink had the authority to grant permission. Viewing the evidence in a light most favorable to State Farm, reasonable minds could come to one conclusion and that conclusion is adverse to State Farm. Temple, 50 Ohio St.2d at 327; Druso,124 Ohio App.3d at 131.
We find no error in the decision granting summary judgment in favor of SGS on the theory of respondeat superior liability and overrule the assignment of error.
Judgment affirmed.
It is ordered that the appellees recover from appellant their costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________________ ANNE L. KILBANE, JUDGE
 PATRICIA ANN BLACKMON, J., CONCUR; TERRENCE O'DONNELL,P.J., CONCURRING IN PART AND DISSENTING IN PART; SEESEPARATE OPINION.