979 So.2d 1030 (2008)
BANCO ESPIRITO SANTO INTERNATIONAL, LTD., et al., Appellants,
v.
BDO INTERNATIONAL, B.V., et al., Appellees.
No. 3D07-599.
District Court of Appeal of Florida, Third District.
March 12, 2008.
Rehearing Denied April 21, 2008.
*1031 Billbrough & Marks and Geoffrey B. Marks, Coral Gables; Thomas, Alexander & Forrester and Steven W. Thomas and Emily S. Alexander; Gonzalo R. Dorta, Miami; Gamba & Lombana and Hector J. Lombana, for appellants.
Broad and Cassel and Mark F. Raymond and Rhett Traband, Miami; Sheppard, Mullin, Richter & Hampton and Kevin W. Goering, for appellees.
Before WELLS, ROTHENBERG, and SALTER, JJ.
SALTER, J.
This is an appeal from an order granting a motion for directed verdict and a final judgment, each in favor of the appellee, BDO International, B.V. ("BDO International"). The trial court found that the appellants, Banco Espirito Santo International, Ltd., Banco Espirito Santo, S.A., and ESB Finance, Ltd. (collectively "the Banco Plaintiffs"), failed to present evidence of an agency relationship between BDO International and a member firm, BDO Seidman, LLP ("BDO Seidman"). Finding that the evidence presented by the Banco Plaintiffs was sufficient to create a jury issue, we reverse and remand.
I. Procedural History
The Banco Plaintiffs' complaint below alleged that the two BDO defendants committed accounting malpractice and were grossly negligent in a series of financial statement audits. The Banco Plaintiffs also alleged that BDO International was vicariously liable as principal for the acts and omissions of BDO Seidman as agent.
The Banco Plaintiffs invested in E.S. Bankest L.C. ("Bankest"), a factoring company located in Miami. The parties acknowledge that Bankest engaged in a massive fraud, and that its principals fabricated records to conceal losses in the hundreds of millions of dollars. Bankest hired BDO Seidman, a New York limited partnership, to conduct the audit of Bankest's financial statements for the years 1998-2002.
In 2004, the Banco Plaintiffs discovered the fraud and commenced their lawsuit against BDO Seidman and BDO International. BDO International moved to dismiss the case for lack of personal jurisdiction, asserting that it was a Netherlands corporation, had its principal place of business in Brussels, Belgium, and did not have the requisite contacts with Florida to be sued here. The trial court denied BDO International's motion, finding that there was an "expectation that BDO could be hailed into the State of Florida to answer for the allegations against its underlings," and that BDO International conducted business in Florida through BDO Seidman. This Court affirmed. BDO Int'l B.V. v. Banco Espirito Santo Int'l, Ltd., 911 So.2d 1246 (Fla. 3d DCA 2005).
BDO International then filed a motion to dismiss the complaint. Again, the trial court denied the motion, but limited the Banco Plaintiffs' claim against BDO International to "a theory of actual agency." The liability phase of the trial was held in early 2007. Although the jury found that BDO Seidman was liable to the Banco Plaintiffs, as to BDO International, the trial court granted a motion for directed verdict. The trial court found that the Banco Plaintiffs failed to present evidence to show that an actual agency relationship *1032 existed between BDO International and BDO Seidman. This appeal followed.
II. Standard of Review
The standard of review for a directed verdict is de novo. See Contreras v. U.S. Sec. Ins. Co., 927 So.2d 16, 20 (Fla. 4th DCA 2006). However, "[a]n appellate court reviewing the grant of a directed verdict must view the evidence and all inferences of fact in the light most favorable to the nonmoving party, and can affirm a directed verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party." Owens v. Publix Supermarkets, Inc., 802 So.2d 315, 329 (Fla.2001) (citation omitted).
III. Vicarious Liability and Actual Agency
Vicarious liability may arise in various ways under Florida law. The parties agree that in this case, however, any such liability would only exist if there was an actual common law agency relationship between BDO International as principal, and BDO Seidman as agent.[1] To establish an actual agency relationship, the Banco Plaintiffs were required to establish: "(1) acknowledgement by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." See Goldschmidt v. Holman, 571 So.2d 422, 424 n. 5 (Fla.1990) (quoting Restatement (Second) of Agency § 1 (1957)). Unless the alleged agency relationship is to be proven exclusively by analysis of the contract between the principal and agent (in which case the question is an issue of law), the relationship is generally a question of fact and should be analyzed by looking at the totality of the circumstances. Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 853-54 (Fla.2003).
IV. The Banco Plaintiffs' Trial Evidence Regarding Agency

A. Acknowledgment by BDO International

The first of the three requisite elements of an actual agency is the principal's acknowledgment that the agent will act for the principal. At trial, the Banco Plaintiffs introduced four types of documents, as well as other evidence, tending to prove this element. First, the Articles of Association of BDO International include, as the objects of the company, "to manage and control" those other "companies, partnerships and other entities which form part of the international association of accountants, auditors, tax-advisers and business advisers." BDO International's international secretary, Mr. Paul van Elten, testified that BDO Seidman was a member of that international network and was "coordinated" and "monitored" by BDO International.[2] Second, the "Member Firm Agreement" ("MFA") between BDO International and BDO Seidman[3] regulated not only traditional licensing and territorial issues, it also reserved to BDO International the ultimate ownership[4] and modification *1033 of the "BDO Technical Manuals" and "BDO Software" utilized by BDO Seidman and other member firms to conduct their accounting and audit business. The definition of "BDO Technical Manuals" in the MFA states that these manuals "lay down accounting, auditing, investigation and other standards and practices to be adhered to by the Member Firm." Revisions to those "manuals, guidelines or instructions" were issued by BDO International after approval by BDO International's "Policy Board."
Third, the Banco Plaintiffs introduced into evidence the BDO audit manuals promulgated by BDO International for use by BDO Seidman and other member firms. Fourth, the trial record included BDO annual reports describing the interrelationships and roles of the various group members. As to BDO International, for example, the 1999 Annual Report states that BDO International's duties included "implementing international quality control and training programmes."
This evidence is representative, and certainly not exhaustive, of the proof that could have been relied upon by a trier of fact to conclude that BDO International acknowledged that BDO Seidman would act as its agent within the assigned territory. Alternatively, the trial court could have determined that the requirements of acknowledgment and acceptance are fulfilled (as a matter of law) by the existence of the MFA itself, a contract signed by both BDO International and BDO Seidman.[5]Daniel v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 718 So.2d 936, 938 (Fla. 3d DCA 1998). The trier of fact would then still have to decide, however, whether the agent's alleged negligence occurred within the scope of the MFA.

B. Acceptance by BDO Seidman

There is also evidence that BDO Seidman accepted the undertakings detailed in the MFA. BDO Seidman's authorized representative signed the MFA, and section 15.1 of the MFA obligated BDO Seidman to assure that all of its partners and subsidiaries would also agree to be bound by the MFA. BDO International's Mr. van Elten testified that BDO Seidman also agreed to make BDO Seidman partners and employees available to BDO International's committees to prepare reports and develop products for BDO International.

C. BDO International's Rights of Control Over BDO Seidman

"When one considers an action based on actual agency, it is the right to control, rather than actual control, that may be determinative." Villazon, 843 So.2d at 853. In this case, Article 2.c of BDO International's Articles of Association included as one of the Company's "objects" the management and control of the member firms (one of which was, without dispute, BDO Seidman). The MFA imposed operating directives and restrictions that extend far beyond those utilized in mere licensing agreements. Although the MFA regulated the use of the group name, logo, and software, the MFA also obligated BDO Seidman partners and employees to (among other things): provide professional *1034 services at the request of BDO International; assist in developing accounting products for BDO International; and comply with the BDO audit manuals promulgated by BDO International. BDO International also retained the right to review BDO Seidman's management from time to time for conformance with the requirements of the MFA. BDO Seidman agreed to provide all information and documentation requested by BDO International in connection with any such review.
These rights and powers distinguish this case from those in which the issue of agency is determinable as a matter of law. In Gillet v. Watchtower Bible & Tract Soc. of Pa., Inc., 913 So.2d 618 (Fla. 3d DCA 2005), for example, we affirmed a summary judgment in favor of church entities alleged to have controlled church members in their door-to-door pamphleteering. When a church member's vehicle backed into a pedestrian in the course of those activities, we concluded that "[t]here is no evidence that any church defendant instructed, advised or in any manner controlled the means by which [a church member] was to get to the place where they were to proselytize." Id. at 621. Here, on the other hand, BDO International did control the meansthe management, audit manuals, and softwareused by BDO Seidman to conduct its work for the Banco Plaintiffs. The detailed standards and procedures set forth in the audit manuals are similar to the operations manual analyzed in Parker v. Domino's Pizza, Inc., 629 So.2d 1026 (Fla. 4th DCA 1993) (noting a genuine and material question of fact raised by the manual and other documents). BDO International distributed annual reports, introduced at trial and as part of the record here, advertising its "strict quality control" over member firms including BDO Seidman and the "stringent conditions with which each member firm has to comply to be part of the BDO network."
The Banco Plaintiffs introduced evidence at trial which, viewed as required in the light most favorable to them, created a triable issue on the question of actual agency.
Conclusion
Conflicting representations of an agency relationship present a question of fact that should be resolved by the trier of fact. Richard Swaebe, Inc. v. Sears World Trade, Inc., 529 So.2d 774, 775 (Fla. 3d DCA 1988). Considering the "totality of circumstances" and the "multiple relationships along with multiple practices and procedures" to be evaluated under Villazon, 843 So.2d at 853, we conclude that this record presented genuine and triable issues of material fact regarding the existence (or non-existence) of an actual agency relationship between BDO International and BDO Seidman.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Apparent agency is not argued here.
[2] Viewing the testimony of Mr. van Elten in the light most favorable to the Banco Plaintiffs, he also answered affirmatively to the question of whether "one of the member firms which BDO International oversees is BDO Seidman?" (emphasis added). "Oversight" is a very near cousin of "supervision."
[3] The MFA was also signed by six other BDO entities conducting accounting and consulting activities from BDO Seidman's New York City offices.
[4] Actual ownership of the technical manuals and software appears to reside in the "Foundation," an entity known as BDO Stichting, but the MFA makes it clear that BDO International has the right to control and authorize the use of those items.
[5] BDO International cited various Florida cases in which acknowledgment and acceptance were found lacking. These cases did not involve a valid, signed contract between the alleged principal and its alleged agent. When a contract exists between the principal and agent, the pertinent inquiry is whether the allegedly-negligent conduct occurred within the scope of the contract. Viewing the evidence in the light most favorable to the Banco Plaintiffs, the Bankest audit by BDO Seidman was an audit falling within the scope of the MFA.