# Third District Court of Appeal

## State of Florida

Opinion filed May 18, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D14-293 & 3D14-1442
Lower Tribunal No. 08-7586
_____


**Salvatore Frieri, etc.,**
Appellant,

vs.

**Capital Investment Services, Inc., etc.,**
Appellee.


_____


**Robert J. Escobio, etc., and Southern Trust Securities Holding Corporation,**
Appellants,

vs.

**Salvatore Frieri, etc.,**
Appellee.

Appeals from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Carlton Fields Jorden Burt, P.A., and Sonia Escobio O'Donnell and Namrata S. Joshi; Berger Singerman LLP, and Lara E. O'Donnell, for appellant Robert J. Escobio and appellee Capital Investment Services, Inc., etc.

Beasley, Demos & Brown, LLC, and Joseph W. Beasley and Jennifer Perez Alonso, for appellant Southern Trust Securities Holding Corporation and appellee Capital Investment Services, Inc., etc.

Berrio & Berrio, P.A., and Juan D. Berrio, Giorgio L. Ramirez and Raul E. Espinoza, for appellant/appellee Salvatore Frieri.


Before ROTHENBERG, SALTER, and SCALES, JJ.

ROTHENBERG, J.

This case, which essentially arose out of a breach of contract dispute, involves two related appeals. First, the plaintiff below, Salvatore Frieri ("Frieri"), appeals the trial court's entry of final judgment following its *ore tenus* entry of a directed verdict in favor of Capital Investment Services, Inc., n/k/a Southern Trust Securities, Inc. ("CIS"), one of three defendants in the litigation below. Second, the other two defendants, Robert J. Escobio ("Escobio") and Southern Trust Securities Holding Corporation ("STS"), appeal the final judgment entered against them in the amount of $7,369,222 and the trial court's denial of their post-trial motions: (1) for judgment notwithstanding the verdict; (2) for a new trial; (3) to alter, amend, or vacate the verdict; and (4) for remittitur ("the post-trial motions"). For the reasons that follow, we affirm each of the trial court's determinations.

2

## BACKGROUND

On December 22, 2004, Escobio, who was the president and CEO of STS and the CEO and director of CIS at all relevant times, entered into a contract with Frieri for the purpose of growing STS's business. As relevant to our decision, the contract contained the following terms and obligations: (1) Frieri was required to invest $6 million to be placed into a trust that would be 50% owned by Frieri and 50% owned by Escobio ("the Escobio/Frieri Trust"), with $1.5 million of Frieri's investment being used to purchase STS shares and $4.5 million of Frieri's investment operating as a loan to the Escobio/Frieri Trust; (2) Escobio was required to place 3,910,110 STS shares into the Escobio/Frieri Trust; and (3) the Escobio/Frieri Trust would own 78% of all STS shares, both issued and outstanding. Thus, the contract was intended to give the Escobio/Frieri Trust control over STS in exchange for Frieri's $6 million investment in STS.

On December 23, 2004, pursuant to the contract, Frieri transferred his $6 million investment to an escrow account with CIS, which was subsequently transferred to STS on February 4, 2005. However, Escobio never placed the 3,910,110 STS shares into the Escobio/Frieri Trust. Thus, the Escobio/Frieri Trust never obtained 78% of all STS shares, and as a result, the Escobio/Frieri Trust never received a controlling stake in STS.

After a series of failed attempts to resolve their differences, Frieri sued Escobio, STS, and CIS, alleging that: (1) Escobio breached his fiduciary duty as trustee of the Escobio/Frieri Trust; (2) Escobio and STS breached the contract; (3) all three defendants were liable for negligent misrepresentation, fraudulent inducement, and fraud ("the misrepresentation claims"); and (4) the trial court should impose a constructive trust against all three defendants.

At the close of the case, Escobio, STS, and CIS moved, *ore tenus*, for a directed verdict, which the trial court denied as to Escobio and STS, but granted as to CIS. The trial court later entered a final judgment in favor of CIS on all counts in the operative complaint, from which Frieri now appeals.

The jury entered a verdict in Frieri's favor and against Escobio and STS for breach of contract and on the misrepresentation claims, and against Escobio for breach of fiduciary duty.[1] Thereafter, Escobio and STS filed their post-trial motions, which the trial court denied. Ultimately, the trial court entered a final judgment allowing Frieri to recover $7,369,222 from Escobio and STS, stemming from their liability for breach of contract. Escobio and STS now appeal the final judgment in favor of Frieri and the order denying their post-trial motions.

---

[1] Because Frieri elected to base the final judgment only on the breach of contract claim, and because we affirm the final judgment in favor of Frieri on that basis, we need not discuss the other claims in the jury's verdict here.

## ANALYSIS

### (I) The Final Judgment in Frieri's Favor

Escobio and STS contend that there was no competent substantial evidence of Escobio's personal liability for breach of contract. For the following reasons, we disagree.

An appellate court must review a trial court's determination on a motion for judgment notwithstanding the verdict de novo and "evaluate the evidence in the light most favorable to the non-moving party, drawing every reasonable inference flowing from the evidence in the non-moving party's favor." Miami-Dade Cnty. v. Eghbal, 54 So. 3d 525, 526 (Fla. 3d DCA 2011). Additionally, we must sustain a jury verdict if it is supported by competent substantial evidence. Hancock v. Schorr, 941 So. 2d 409, 412 (Fla. 4th DCA 2006).

The entire document must be considered when determining "whether the parties intended to bind their principal businesses alone, or also the signing agents in their individual capacities." MacKendree & Co., P.A. v. Pedro Gallinar & Assocs., P.A., 979 So. 2d 973, 976 (Fla. 3d DCA 2008). Even if a signatory to a contract adds to his signature block an official designation, such as "president" or "agent," he may still be personally liable if "the contract contains language indicating personal liability or **the assumption of personal obligations**." Fairway Mortg. Solutions, Inc. v. Locust Gardens, 988 So. 2d 678, 681 (Fla. 4th DCA

5

2008) (citation and quotation omitted) (emphasis added); <u>Manufacturers' Leasing, Ltd. v. Fla. Dev. & Attractions, Inc.</u>, 330 So. 2d 171, 172 (Fla. 4th DCA 1976) (stating that the addition of an official designation to a signature line "in the absence of words in the body of the instrument showing a different intent, is to be treated as matter of description, and the agent or official is **personally** the contracting party") (quoting Williston on Contracts, Third Edition, Vol. II, § 299) (emphasis added).

We find that competent substantial evidence was presented to the jury in support of the claim that Escobio was personally liable for breach of contract because the contract's clear language indicated Escobio's assumption of a personal obligation. The contract required Escobio to place 3,910,110 shares into the Escobio/Frieri Trust. This personal obligation was breached because Escobio never placed any of the required 3,910,110 STS shares into the Escobio/Frieri Trust. While the text underneath Escobio's signature in the contract identified him as the president of STS, as stated above, the mere addition of Escobio's official designation does not shield him from personal liability because the contract's language shows that he assumed personal obligations.

Thus, considering the contract as a whole, and given that our standard of review requires us to resolve all inferences in Frieri's favor, we find that the jury's verdict holding Escobio personally liable for breach of contract was supported by

6

competent substantial evidence. In addition to Escobio's personal liability, both STS and Escobio agree that STS was bound by the contract, and we therefore also find that there was competent substantial evidence of STS's liability for breach of contract.[2]

**(II) <u>The Final Judgment in CIS's Favor</u>**

Frieri argues that the trial court should not have entered a directed verdict in favor of CIS because sufficient evidence was presented to support a jury finding against CIS on Frieri's constructive trust claim and misrepresentation claims. For the following reasons, we disagree.

While the standard of review for the trial court's entry of a directed verdict is de novo, an appellate court "can affirm a directed verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party." <u>Banco Espirito Santo Int'l, Ltd. v. BDO Int'l, B.V.</u>, 979 So. 2d 1030, 1032 (Fla. 3d DCA 2008) (quoting <u>Owens v. Publix Supermarkets, Inc.</u>, 802 So. 2d 315, 329 (Fla. 2001)).

The essence of the equitable remedy of constructive trust is whether specific property or funds can be identified as the res upon which a constructive trust should be imposed. <u>Collinson v. Miller</u>, 903 So. 2d 221, 229 (Fla. 2d DCA 2005).

---

[2] After full and fair consideration, we find that Escobio's and STS's remaining arguments, including their arguments for remittitur or a new trial, are without merit, and we decline to discuss them here.

Thus, "a constructive trust may be imposed only where the trust res is 'specific and identifiable property,' or can be 'clearly traced in assets of the defendant.'" Bank of Am. v. Bank of Salem, 48 So. 3d 155, 158 (Fla. 1st DCA 2010) (quoting Gersh v. Cofman, 769 So. 2d 407, 409 (Fla. 4th DCA 2000)).

Frieri's claim that a constructive trust should be imposed against CIS for his $6 million investment is meritless because Frieri has failed to introduce evidence of specific and identifiable property in any of CIS's assets which might constitute the res of his proposed constructive trust. The record on appeal reflects that, at most, CIS only maintained some level of control over Frieri's $6 million from December 23, 2004, when the investment was transferred to CIS's escrow account, through February 4, 2005, when the investment was transferred to STS. Thereafter, when Frieri filed suit against Escobio, STS, and CIS, Frieri's $6 million investment could neither be identified in nor traced to CIS's assets. Without an identifiable res traceable to CIS's assets upon which a trust might be imposed, Frieri's claim for a constructive trust against CIS must fail.

Next, Frieri argues that the trial court erred in granting a directed verdict as to Frieri's misrepresentation claims against CIS. We disagree. Each of Frieri's misrepresentation claims requires a showing that CIS made a misrepresentation to Frieri. See Witt v. La Gorce Country Club, Inc., 35 So. 3d 1033, 1039-40 (Fla. 3d DCA 2010) (stating that a claim for fraudulent inducement requires proving a

8

misrepresentation of a material fact); <u>Romo v. Amedex Ins. Co.</u>, 930 So. 2d 643, 653 (Fla. 3d DCA 2006) (stating that a claim for negligent misrepresentation requires proving that "the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false"); <u>Lopez-Infante v. Union Cent. Life Ins. Co.</u>, 809 So. 2d 13, 15 (Fla. 3d DCA 2002) (stating that a claim for fraud requires proving "a false statement concerning a specific material fact"). However, Frieri failed to introduce any evidence to substantiate his claim that CIS made a misrepresentation to Frieri. Without any evidence that CIS made a misrepresentation of any kind to Frieri, Frieri's misrepresentation claims must also fail.[3]

## **<u>CONCLUSION</u>**

In conclusion, we affirm the trial court's denial of Escobio's and STS's post-trial motion and affirm the resulting final judgment in Frieri's favor because the jury was presented with competent substantial evidence of Escobio's and STS's liability for breach of contract. We also affirm the trial court's entry of a directed verdict in favor of CIS because no evidence was presented on Frieri's constructive trust claim that showed how Frieri's investment was either identified in, or traced to, any of CIS's assets at the time Frieri filed suit, and further, no evidence was

---

[3] We find that Frieri's remaining arguments are without merit, and we decline to discuss them here.

presented to suggest that CIS misrepresented any facts to Frieri that might support Frieri's misrepresentation claims against CIS.

Affirmed.