# Third District Court of Appeal

## State of Florida

Opinion filed September 6, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2583
Lower Tribunal No. 12-30637
_____

**Northrop Grumman Systems Corporation, etc.,**
Appellant,

vs.

**Rosa-Maria F. Britt, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

DLA Piper and Fredrick H.L. McClure and J. Trumon Phillips (Tampa); Munger, Tolles & Olson and Michael B. DeSanctis (Washington, DC) and John B. Major (San Francisco, CA), for appellant.

The Ferraro Law Firm and Juan P. Bauta, II, and Janpaul Portal, for appellee.

Crowell & Moring and William L. Anderson; Shook Hardy & Bacon and Frank Cruz-Alvarez, for Florida Justice Reform Institute and Coalition for Litigation Justice, Inc., as amici curiae.

Before SUAREZ, SALTER and LUCK, JJ.

SALTER, J.

This is a mesothelioma case originally brought by Dennis Britt and his wife, Rosa-Maria Britt (as to loss of consortium), as plaintiffs ("Mr. and Mrs. Britt"), against Northrop Grumman Systems Corporation ("Northrop"). In 2014, Mr. Britt passed away, and Mrs. Britt (as personal representative of his estate), was substituted for Mr. Britt. Mrs. Britt also amended the complaint to add a claim for wrongful death.

At the end of a week-long trial, the jury rendered a verdict awarding Mr. Britt's estate a total of $519,265.60 in medical and funeral expenses, and awarding Mrs. Britt $8,500,000.00 in compensatory damages. Northrop appealed and has raised five issues here:

1.      Northrop argues that Mrs. Britt failed to file and serve her motion for substitution within 90 days after Mr. Britt's death was "suggested upon the record," as required by Florida Rule of Civil Procedure 1.260(a)(1), requiring dismissal of the complaint.[1]

2.       Northrop asserts that Mrs. Britt failed to prove that Mr. Britt's exposure to asbestos while on the premises of Northrop (and companies acquired

---

[1]  When the trial court granted Mrs. Britt's motion for substitution, Northrop filed a petition for certiorari in this Court. The petition was denied without elaboration. Northrop Grumman Sys. Corp. v. Britt, 210 So. 3d 64 (Fla. 3d DCA 2016) (table).

by Northrop) was a substantial cause of Mr. Britt's mesothelioma, and that the trial court erred when it denied Northrop's motions for a directed verdict.

3.      Northrop claims error in the trial court's rulings allowing the admission of expert testimony by Mrs. Britt's expert witness, Dr. Murray Finkelstein. Northrop alleges that Dr. Finkelstein's methodology was equivalent to an "any exposure" or "single fiber" causation opinion—a methodology discredited by the courts and one which precluded the opinion from admission into evidence.

4.      Northrop also maintains that a 2013 asbestos fiber analysis and report prepared by Dr. Anna Somigliana in Milan, Italy,[2] was a "late-disclosed and prejudicial expert opinion" that should not have been admitted into evidence.

5.      Northrop contends that the trial court should not have excluded evidence regarding nonparties that may have exposed Mr. Britt to asbestos during his career, depriving Northrop of an apportionment of liability on the verdict form under Fabre v. Marin, 623 So. 2d 1182 (Fla. 1993). Northrop argues that there was as much evidence of causation and Mr. Britt's exposure to asbestos on the premises of nonparties Mack Trucks and Bekins as there was regarding his exposure on the premises of Northrop.

---

[2] Mr. Britt met his wife while in the military and stationed in Italy. The couple moved to the United States, but traveled frequently to visit friends and relatives in Italy. Mr. Britt received his diagnosis and much of his treatment in Italy.

We find no reversible error regarding any of these points, and thus affirm the verdict and final judgment below. Before addressing Northrop's contentions in order, we consider the pertinent facts and proceedings that culminated in the verdict and final judgment.

Pertinent Facts and Proceedings Below

Mr. Britt was an employee benefits advisor during the period 1978-97. As part of that work, Mr. Britt visited commercial and industrial facilities to speak with, and enroll, the employees at those facilities. Those facilities included workplaces owned and operated by Northrop and subsidiaries.

Mr. Britt testified before his death that, during the course of his visits to Northrop facilities in Bethpage, New York, and Hawthorne, California, he was exposed to, and inhaled, asbestos fibers while on the premises of the facilities. He, his physician, and his expert witness, testified that Mr. Britt's exposure to the asbestos was a substantial cause of his ultimately-fatal mesothelioma.

At trial, Mrs. Britt introduced evidence that Northrop's facilities where Mr. Britt had worked contained asbestos-insulated pipes that released airborne materials above him, and ten to fifteen feet away from him, during the maintenance activities he saw during his visits. His deposition testimony that he was on site at Northrop's facilities each year from 1979 to the "mid 80s," and

working in areas where asbestos remediation and maintenance activities were taking place, provided an estimate of over 500 days of exposure.

Although Mr. Britt's deposition also included his description of visits to non-party facilities owned by Mack Trucks and Bekins Van Lines, and his observations of dust and maintenance performed on pipes and boiler rooms at those facilities, there was no evidence that the pipes and boilers at those facilities were asbestos-containing. In contrast, the evidence at trial contained extensive documents and testimony regarding the presence of asbestos in the pipes and boiler rooms at the Northrop sites visited by Mr. Britt, and regarding the repair and remediation work performed during the applicable period.

There was no dispute regarding the fact that Mr. Britt was diagnosed with, and died because of, mesothelioma. The expert medical testimony in the case addressed whether asbestos fibers from the Northrop premises were a substantial cause of the mesothelioma (a classification as "asbestos-related"), or whether the mesothelioma was instead "spontaneous," "idiopathic," or "non-asbestos-related." This differential diagnosis is primarily performed through a microscopic examination of a patient's lung tissue[3] samples to count the types of asbestos fibers and asbestos bodies per square centimeter.

---

[3] Samples extracted from a patient's lymph nodes may also assist in the diagnostic process.

Northrop's expert, Dr. Roggli, concluded that the pathological assessment of Mr. Britt's lung tissue and lymph node samples was not consistent with an asbestos-related variant of mesothelioma. The plaintiff's expert, Dr. Finkelstein, assessed Mr. Britt's exposure history—taking into account Dr. Finkelstein's own published, peer-reviewed studies on workers diagnosed with asbestos-related mesothelioma after exposure to asbestos-laden insulation—and the asbestos fiber pathology reports on tissue samples from Mr. Britt's lungs. Dr. Finkelstein also testified regarding the two other known causes of mesothelioma, ruling them out based on the facts of Mr. Britt's work and medical history.

As already noted, an asbestos fiber report prepared by Dr. Anna Somigliana regarding her microscopic examination of tissue from Mr. Britt's lungs was identified and listed on the plaintiff's pretrial exhibit catalogue on August 22, 2016, four weeks before trial was scheduled to begin.[4] The exhibit was hand-delivered to counsel for Northrop the following day.

_____

[4]  Northrop's characterization of the listing and delivery of the document as a "surprise disclosure on the eve of trial" overstates the sequence of events. Between the disclosure of the report and trial, Northrop was provided a certified translation, a disclosure of the methodology used by Dr. Somigliana and her laboratory in preparing the fiber report, and a telephonic deposition of Dr. Somigliana. The trial court encouraged Northrop's counsel to advise him if there were any remaining issues regarding access to the report and witness. Finally, Northrop's expert, Dr. Roggli, testified that his review of the report and Dr. Somigliana's testimony did not change his opinion that Mr. Britt's mesothelioma was not asbestos-related.

The jury returned a verdict in favor of Mrs. Britt. The trial court denied Northrop's renewed motion for directed verdict and entered a final judgment against Northrop. This appeal followed.

Analysis

I.     The Motion for Substitution and Rule 1.260(a)(1)

Northrop's argument that Mrs. Britt's motion for substitution was untimely (following Mr. Britt's death in 2014) involves the application of Florida Rule of Civil Procedure 1.260(a)(1), presents a pure question of law, and is thus reviewed de novo. D'Angelo v. Fitzmaurice, 863 So. 2d 311, 314 (Fla. 2003).

Rule 1.260(a)(1) states that a case must be dismissed as to a deceased plaintiff if a motion for substitution is filed over 90 days "after the death is suggested upon the record by service of a statement of the fact of the death in the manner provided for the service of the motion." In the present case, Mr. Britt passed away on June 13, 2014. On June 16, 2014, counsel for Mrs. Britt sent an email and attached letter to the trial judges and parties advising them of Mr. Britt's death. That communication was not filed or recorded, however, in the circuit court docket or in the official records of Miami-Dade County.

The motion for substitution (which also included a motion for leave to amend) was filed and served December 4, 2014. The trial court denied the motion, but with leave to refile upon a showing demonstrating reasons for failing to

7

comply with the 90 day requirement of Rule 1.260(a)(1). When Mrs. Britt renewed the motion with legal argument regarding the proper application of Rule 1.260(a)(1), the court granted the motion to substitute and to amend.

The question of law presented is whether counsel's prompt email and letter, essentially a courtesy notice following an event that obviously would affect pretrial proceedings, was "suggested upon the record by service of a statement of the fact of the death in the manner provided for service of the motion." If so, the motion to substitute was untimely. But if not, the motion to substitute was timely and Mr. Britt's claim was not subject to dismissal.

In the Rule's existing text, we conclude that "suggested upon the record" and "served in the manner provided for service of the motion" compel the same result. The "statement of the fact of the death" must be both (a) filed with the clerk of court for docketing to make it part of the official record in the case, and (b) "served" pursuant to Florida Rule of Judicial Administration 2.516(d),[5] which in turn includes the requirement for the document to be "filed with the court."

---

[5] The pertinent part of Rule 2.516(d) states that "[a]ll documents must be filed with the court either before service or immediately thereafter, unless otherwise provided for by general law or other rules." A suggestion of death is not exempted from the filing requirement "by general law or other rules," and "filed with the court" plainly is not equivalent to "emailed to the judge," unless the judge actually files the document with the clerk of court to make it a part of the official case record. In this case, the email and letter sent to the trial judges and counsel three days after Mr. Britt's death were not docketed.

In the early days of this Court, a similar question was considered in the case of <u>Pan American World Airways, Inc. v. Gregory</u>, 96 So. 2d 669, 671 (Fla. 3d DCA 1957). The Court considered Florida Rule of Civil Procedure 1.4, "Service of Pleadings and Papers," precursor to Florida Rule of Judicial Administration 2.516(d), "Service of Pleadings and Documents:"

> [A]ll the rules bearing on the method of presenting pleadings to the court should be construed together. It therefore follows that the mere service of a pleading is not enough to present the pleading to the court. An additional act is necessary and an attorney has not presented his client's pleading to the court until he has complied with that portion of Rule 1.4(d) … providing that the pleading shall be filed with the court.

As Mrs. Britt's email and letter were not "filed with the court," the 90-day deadline in Florida Rule of Civil Procedure 1.260(a)(1) did not commence until Mrs. Britt served her motion for substitution (which included a statement of the fact of Mr. Britt's death) and also filed that motion with the clerk of court. The same conclusion was reached by another district court of appeal in <u>Wilson v. Clark</u>, 414 So. 2d 526 (Fla. 1st DCA 1982) (time provision of Rule 1.260(a) is triggered by the recording or filing of the suggestion of death, not simply by service on counsel). Although the trial court committed no error in allowing substitution in this case, we take the occasion to suggest that "suggested upon the record" may be an archaic phrase worthy of review by The Florida Bar's Civil Procedure Rules Committee.[6]

II.    Causation

We review the trial court's denial of Northrop's motion for directed verdict on causation de novo, but in doing so we evaluate the evidence adduced at trial in the light most favorable to Mrs. Britt, drawing every reasonable inference from that evidence in her favor. We must sustain the jury's verdict if supported by competent, substantial evidence. Frieri v. Capital Inv. Serv., Inc., 194 So. 3d 451, 454 (Fla. 3d DCA 2016); R.J. Reynolds Tobacco Co. v. Ballard, 163 So. 3d 541, 545 (Fla. 3d DCA 2015).

Northrop contends that Dr. Finkelstein's opinion failed to establish the amount of asbestos Mr. Britt inhaled over the years he visited Northrop's premises. The evidence at trial included, however, Northrop's own industrial hygienist's report that in 1985 Northrop's Hawthorne plan had "no exposure monitoring records for employees engaged in maintenance-type functions on asbestos-containing fireproofing or pipe lagging materials." A Northrop witness testified that there was no routine air sampling done at either the Hawthorne or Bethpage facilities during the period Mr. Britt was there. Northrop's records substantiated

---

[6] Federal Rule of Civil Procedure 25(a)(1) was the original template for Florida Rule of Civil Procedure 1.260(a)(1). The term "suggested upon the record," has been deleted from the federal provision, in favor of the simple formulation: "If the motion [for substitution] is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Though expressing no opinion regarding this or any other revision, we are directing the Clerk of this Court to forward a copy of this opinion to The Florida Bar's Civil Procedure Rules Committee for consideration.

10

the presence of asbestos and remediation activities at the Northrop facilities in Bethpage and Hawthorne during the pertinent time periods.

Having failed to monitor and quantify airborne asbestos levels at Northrop's plants during the applicable years, Northrop is hardly in a position to demand precise quantification[7] from Mrs. Britt. On such a record, the pathology and medical records reflecting the existence and level of asbestos fibers in Mr. Britt's lungs, coupled with his personal testimony regarding his visits to the premises and what he observed while there—followed by his undisputed death from mesothelioma—constitutes competent, substantial evidence supporting the verdict.

## III. Admissibility of Dr. Finkelstein's Expert Testimony

Northrop contends that Dr. Finkelstein's testimony was an "any exposure" or so-called "single fiber" expert opinion excludible under either Frye[8] or Daubert,[9] the competing standards embroiled in the legislative amendments to the Florida Evidence Code (amending sections 90.702 and 90.704, Florida Statutes (2012))

---

[7] On this point and Northrop's related argument regarding the admissibility of Dr. Finkelstein's testimony, numerous courts have recognized the inherent difficulty (if not impossibility) of precisely quantifying the details of a claimant's exposure to toxic substances in industrial settings. See, e.g., Westberry v. Gislaved Gummi AB, 178 F. 3d 257, 264 (4th Cir. 1999), and Scapa Dryer Fabrics, Inc. v. Knight, 788 S.E. 2d 421, 426 n.9 (Ga. 2016).

[8] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), adopted in Florida in Bundy v. State, 471 So. 2d 9 (Fla. 1985).

[9] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

11

and the Florida Supreme Court's analysis of the constitutionality of those amendments, In re Amendments to Fla. Evidence Code, 210 So. 3d 1231 (Fla. 2017). For our part, after reviewing Dr. Finkelstein's testimony, credentials, published and authoritative literature, and opinions, we find no abuse of discretion[10] under either of those standards in the present case.

Applying the more rigorous standard, Daubert and its codification in sections 90.702 and 90.704, the trial court in the present case discharged its duty as "gatekeeper" for proffered expert testimony. Dr. Finkelstein's testimony established his background and experience as a physician and epidemiologist for the Ontario Department of Labor for 30 years, studying the health of workers ("particularly asbestos workers in the province"). His doctorate in experimental physics included studies of asbestos, other crystals, and asbestos fibers.

Dr. Finkelstein conducted and published studies of workers exposed to asbestos, rock dust, silica, radioactive gas (in mines in Ontario), and air pollution. He was invited to be an epidemiologist on the Asbestos Science Advisory Board established by the Environmental Protection Agency. He testified that he had published 50 to 60 peer-reviewed research papers dealing with asbestos disease.

Regarding Mr. Britt's exposure, Dr. Finkelstein testified that "in the aggregate" Mr. Britt's presence for "at least 150 days"[11] of exposure to asbestos at

---

[10] McCloud v. State, 208 So. 3d 668, 680 (Fla. 2016) (trial court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion).

12

Northrop facilities was a substantial contributing cause of his ultimately-fatal mesothelioma. Dr. Finkelstein directly rejected Northrop's invitation to opine that "any," "every," or "a single" exposure to airborne asbestos could be a contributing cause to a patient's mesothelioma, noting that the removal of asbestos-containing insulation of the kind present in the Northrop facilities would involve millions of asbestos fibers per cubic yard of insulation, and that cumulative exposure was significant in Mr. Britt's case.[12]

Dr. Finkelstein's expertise, his application of reliable methodology and peer-reviewed, published studies, and the general acceptance by the scientific community of the relationship between the inhalation of asbestos fibers and mesothelioma, distinguish the present case from the rejection, based on Daubert, of proffered "every exposure" testimony by a medical toxicologist in Crane Co. v. DeLisle, 206 So. 3d 94, 103-106 (Fla. 4th DCA 2016), review granted, Case No.

---

[11] Mr. Britt's actual testimony regarding his time at the Northrop facilities can be calculated at approximately 560 days; the exposure computation of "at least" 150 days occurred during the cross-examination of Dr. Finkelstein by Northrop's counsel.

[12] The amici curiae brief of "Florida Justice Reform Institute" and "Coalition for Litigation Justice, Inc." also challenges Dr. Finkelstein's causation testimony in the present case, arguing that "a scientific quantification of dose is essential in any toxic tort case," and that anything else is unscientific and speculative. The amici, however, betray a higher level of friendship to the insurers behind the "Coalition for Litigation Justice" than to the Court or the authoritative medical literature regarding human exposure to asbestos fibers and mesothelioma.

SC16-2182 (Fla. July 11, 2017). The trial court did not abuse its discretion in admitting Dr. Finkelstein's testimony and opinions.

## IV.    Dr. Somigliana's Asbestos Fiber Analysis Report

Dr. Somigliana was not offered as an expert on causation, but rather as the medical professional who prepared a pathology report and could authenticate the report as a business record under section 90.803(6)(a), Florida Statutes (2016). Her deposition was permitted when Northrop declined to stipulate to the authenticity of the document. Trial court rulings on the admissibility of evidence such as the pathology report are reviewed for an abuse of discretion. Lewis v. Sun Time Corp., 47 So. 3d 872, 874 (Fla. 3d DCA 2010).

Nor do we find that the timing of the turnover of the pathology report was violative of the pretrial order, "trial by ambush," or so prejudicial as to warrant a new trial or other sanction.[13] Northrop ultimately received the report, a certified translation, a summary of the methodology used in analyzing Mr. Britt's lung tissue samples, and a deposition of Dr. Somigliana. And Northrop did not ask for other relief when the trial court invited counsel to let the court know if Northrop needed additional consideration of the issue following the deposition. The trial court did not abuse its discretion in admitting Dr. Somigliana's report.

## V.    Prospective Fabre Defendants

---

[13] See Binger v. King Pest Control, 401 So. 2d 1310 (Fla. 1981).

Finally, Northrop maintains that two non-party entities, Mack Trucks and Bekins, should have been included on the verdict form as Fabre defendants. Northrop argues that Mr. Britt's testimony suggested exposure to asbestos during his visits to Mack Trucks and Bekins facilities, thereby indicating that those parties may also have been a substantial contributing cause of his mesothelioma.

This argument fails, because no evidence established that asbestos was present at the non-party sites during the time Mr. Britt visited those facilities. Mrs. Britt's pretrial motion in limine to exclude evidence regarding prospective Fabre defendants was granted after Northrop failed to provide the trial court with evidence that there was asbestos in any of the products for which those prospective defendants were responsible. This burden, the presentation of sufficient evidence "to prove the non-party's liability or fault by a preponderance of the evidence,"[14] was not satisfied by a Northrop proffer or by proof at trial.

Conclusion

Based on the foregoing analysis, the final judgment is affirmed in all respects.

---

[14] Honeywell Int'l, Inc. v. Guilder, 23 So. 3d 867, 870 (Fla. 3d DCA 2009).