# Third District Court of Appeal

## State of Florida

Opinion filed May 5, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1544
Lower Tribunal Nos. 15-4525, 15-4520, & 15-4519
_____

**Karen Hernandez, etc.,**
Appellants,

vs.

**Shuli Andrew Mishali,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Alexander Bokor, Judge.

Eaton & Wolk, PL, and William G. Wolk, for appellants.

Carlton Fields, P.A., and Paul L. Nettleton and Jeffrey A. Cohen, for appellee.

Before LOGUE, HENDON, and LOBREE, JJ.

LOGUE, J.

Osvaldo Lopez, Fabio Padilla, Karen Hernandez, and her two minor children, the plaintiffs below, appeal the trial court's order granting defendant Shuli Mishali's motion to set aside a jury verdict rendered in the plaintiffs' favor and the entry of a directed verdict for Mishali following an automobile accident. The plaintiffs argue that a successor trial judge, who did not preside over the trial, erred in granting the directed verdict because there was competent substantial evidence to support the jury's verdict that Mishali was negligent and, most importantly, to support its rejection of Mishali's defense that he unexpectedly lost consciousness or experienced syncope prior to the collision. We agree and reverse.

## BACKGROUND

On the afternoon of February 11, 2015, Mishali was picking up Daisy Smitananda, his former girlfriend, from a train station and driving to her father's house. Mishali testified that, as he was driving, he told Smitananda that he was feeling strangely hot and weird, and he thought about putting the window down. Mishali next recalled driving at 13 miles per hour in a school zone but testified that he was unable to remember anything after that. Smitananda's deposition testimony, which was admitted at trial and read to the jury, revealed that Mishali had sped through the school zone prior to running a red light and crashing into the rear of plaintiffs' car. According to

2

Smitananda, when Mishali ran the red light, Smitananda told him, "Hey, that was a red light," but Mishali was unresponsive. She testified that Mishali's "eyes were open, and he was looking forward" while the car was "still accelerating a little bit." Mishali's next recollection was Smitananda asking, "Are you okay?" and telling him that he had just hit a car.

In the car that was hit by Mishali was Lopez in the driver seat, Padilla in the front passenger seat, and Hernandez and her two children in the backseat. Lopez's car was stopped at a red light at an intersection in North Miami. He testified that without warning, Mishali rear ended Lopez's car which was propelled forward and crashed into a Miami-Dade transit bus as it was crossing the intersection. Mishali's minivan impacted Lopez's car with such force that most of the plaintiffs lost consciousness. Fire rescue personnel had to extract Hernandez from the back of the mangled car before airlifting her and transporting the other plaintiffs to the hospital with serious injuries.

After the crash, Mishali was found conscious. Lopez testified that he saw Mishali laying on the ground in pain and screaming that he was sorry. Mishali was transported to the hospital where he was treated, evaluated, and diagnosed with: "Chest Wall Pain; Leg Laceration; Syncope."

The plaintiffs initially brought three separate negligence actions against Mishali which were transferred to the same circuit court division and consolidated. In his answer and affirmative defenses, Mishali did not initially raise the defense of a sudden and unexpected loss of consciousness. The case was bifurcated between liability and damages phases. Before trial, Mishali filed several motions in limine. The trial court granted the motions to exclude evidence that Mishali had (1) tested positive for the substance THC at the hospital after the collision and (2) been arrested shortly after his discharge from the hospital for possession of marijuana.

A two-day trial was held in September 2018. Lopez was the sole witness for the plaintiffs' case-in-chief. He testified about how the accident occurred. During cross examination, defense counsel read Lopez's answer to an interrogatory in which Lopez stated, "the defendant [Mishali] blacked out while driving and rear ended my vehicle." On re-direct, however, Lopez confirmed that he had no actual knowledge regarding whether or not Mishali had blacked out before the crash.

The defense presented testimony from Mishali and Dr. Kester Nedd, a neurologist who diagnosed Mishali after the accident. The deposition testimony of Smitananda, the sole passenger in Mishali's car on the date of the accident, was read to the jury. Mishali testified that in the days leading

4

up to the accident he "felt fine" although in the couple of weeks prior to the accident he was working extended hours and had recently gone through a breakup. When asked if he had any reason to expect that he could pass out, Mishali answered that he considered himself a healthy individual, recalled an event when he was ten years old where he fainted and was taken to the hospital by his parents, and confirmed that he had no other medical conditions. Mishali testified that he did not try to stop the car after he started feeling strange because he believed that he did not have the chance to stop at that point.

The sworn testimony of Smitananda, the passenger in Mishali's car, revealed that Mishali was driving over 30 miles per hour and never hit the brakes before the impact. When asked if she recalled Mishali telling the doctors at the hospital that he had lost consciousness, which was the reason why he crashed, she answered: "Nothing that stands out." Later when asked the same question, she answered: "Yes. Well, yes. I mean, I just knew that's why. So I mean, when it happened, I'm sure it didn't really stand out to me."

As for the expert testimony presented to the jury, Dr. Nedd testified that in his opinion, based on the medical records and his own clinical assessment, Mishali had "suffered a syncopal episode right before the accident occurred." Dr. Nedd, however, testified that it was possible for

5

Mishali to have no memory of the accident because of the severity of the impact. He also testified about several diagnostic tests he administered to diagnose Mishali and that all but one test, the Dix-Hallpike maneuver, came back negative for syncope.

According to Dr. Nedd's testimony, the Dix-Hallpike maneuver is administered to trigger vestibular dysfunction in the body by having the patient tilt his or her head in certain directions and rapidly moving the patient from a sitting position to a supine (resting) position. On cross examination, Dr. Nedd admitted that the main purpose of the Dix-Hallpike maneuver is to test for benign positional vertigo and not for syncope. Ultimately, Dr. Nedd concluded that Mishali "had a syncopal episode likely triggered by vertigo from turning his head." However, there was no testimony presented that Mishali had actually turned his head, or even experienced vertigo, while driving moments before the crash.

In closing argument, counsel for the plaintiffs urged the jury to find in their favor for two separate reasons: (1) Mishali, who allegedly had a prior condition based on his sworn testimony, felt something coming on but did nothing about it to avoid the crash; and (2) Mishali never lost consciousness before the accident but rather was unable to remember how or why the accident occurred because of the severity of the impact.

6

After the close of all the evidence, Mishali moved for a directed verdict. The trial court reserved its ruling and submitted the case to the jury. The court instructed the jury on the plaintiffs' claims for negligence, Mishali's defense of a sudden and unexpected loss of consciousness, and the believability of witnesses based on Florida Standard Jury Instruction (Civil) 601.2.

The jury returned a verdict for the plaintiffs. There was one question on the verdict form— "Was there negligence on the part of Shuli A. Mishali which was the legal cause of this motor vehicle accident?"—which the jury answered in the affirmative. The jury was never specifically asked to determine whether Mishali had suffered a sudden and unexpected loss of consciousness or syncope event prior to the accident. After the jury rendered its verdict for the plaintiffs, Mishali renewed his motion for directed verdict and moved for judgment notwithstanding the verdict. The trial court requested Mishali to file a written motion.

On September 28, 2018, Mishali filed his motion to set aside the verdict, and any judgment which may be entered based on the jury's verdict, and for a directed verdict. Mishali admitted that his vehicle rear-ended the plaintiffs' vehicle but denied that he was negligent by asserting that he had suffered a sudden and unexpected loss of consciousness before the

7

accident. Mishali argued that the plaintiffs failed to present any evidence at trial to rebut his loss of consciousness defense. The plaintiffs did not file a response in opposition.

Mishali's motion was heard over five months later, on March 19, 2019. By then, a different judge assumed responsibility for the case. The successor trial judge, who did not have the benefit of presiding over the jury trial, granted Mishali's motion to set aside the jury verdict, and entered a directed verdict in his favor. In its order, the trial court found that the plaintiffs lacked competent substantial evidence to refute Mishali's sudden loss of consciousness defense, concluded that no reasonable jury could have found in favor of the plaintiffs, and entered final judgment in favor of Mishali. The plaintiffs appealed that order.

**STANDARD OF REVIEW**

An order on a motion for directed verdict and for judgment notwithstanding the verdict is reviewed de novo. Kopel v. Kopel, 229 So. 3d 812, 819 (Fla. 2017). In our review, we must determine "whether any reasonable jury could have rendered the verdict." Fridman v. Safeco Ins. Co. of Ill., 185 So. 3d 1214, 1227 (Fla. 2016). "[A]n appellate court reviewing the grant of a directed verdict must view the evidence and all inferences of fact in the light most favorable to the nonmoving party, and can affirm a directed

8

verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party." <u>Banco Espirito Santo Int'l, Ltd. v. BDO Int'l, B.V.</u>, 979 So. 2d 1030, 1032 (Fla. 3d DCA 2008) (quoting <u>Owens v. Publix Supermarkets, Inc.</u>, 802 So. 2d 315, 329 (Fla. 2001)); <u>see also</u> <u>Marriott Int'l, Inc. v. American Bridge Bahamas, Ltd.</u>, 193 So. 3d 902, 905 (Fla. 3d DCA 2015) (noting: in reviewing a trial court's ruling on a motion for directed verdict and for judgment notwithstanding the verdict, "[a]ppellate courts are required to evaluate the evidence in the light most favorable to the non-moving party, and abstain from reweighing any conflicting or ambiguous evidence presented below").[1]

## DISCUSSION

We begin with the general principle that in rear end collision cases "a presumption of negligence arises . . . which shifts the burden to the

---

[1] We also note that because the order under review was entered by a successor judge based upon review of a cold record, without the benefit of having witnessed the trial, the discretion of the successor judge to set aside the jury's verdict is "significantly diminished." <u>Nat'l Healthcorp Ltd. P'ship v. Close</u>, 787 So. 2d 22, 26 (Fla. 2d DCA 2001). <u>Cf.</u> <u>Winn-Dixie Stores, Inc. v. Winters</u>, 272 So. 3d 510, 512 (Fla. 3d DCA 2019) (applying "narrowed abuse of discretion standard" to successor judge's order vacating final judgment following a jury trial and granting a new trial for the plaintiff); <u>Pogue v. Garib</u>, 254 So. 3d 503, 506 (Fla. 4th DCA 2018) (noting a successor judge is not accorded the same deference upon review of a motion for additur or new trial "because a successor judge must rely on the written record alone, having not witnessed the trial").

defendant to explain his or her inability to avoid the collision." Ortlieb v. Butts, 849 So. 2d 1165, 1168 (Fla. 4th DCA 2003). As the Supreme Court explained, "the presumption that arises in rear-end collision cases is a legal construct that 'arises out of necessity' because the front driver in a rear-end collision is usually in a poor position to observe, and thus introduce evidence on, the cause of the collision." Birge v. Charron, 107 So. 3d 350, 359 (Fla. 2012) (footnote omitted).

This presumption of negligence can be rebutted by the defense of a sudden and unexpected loss of consciousness. Wingate v. United Servs. Auto. Ass'n, 480 So. 2d 665, 666 (Fla. 5th DCA 1985) ("It is well established that the unforeseeable loss of consciousness while driving is a complete defense to the charge of negligence."); Goodis v. Finkelstein, 174 So. 2d 600, 603 (Fla. 3d DCA 1965) ("It is recognized that a loss of consciousness while driving is a complete defense if such loss was not foreseeable.").[2] Once the presumption is rebutted by the rear-end driver,

---

[2] To establish this defense, a defendant must prove the following:
  1. The defendant suffered a loss of consciousness or capacity;
  2. The loss of consciousness or capacity occurred before the defendant's purportedly negligent conduct;
  3. The loss of consciousness was sudden;
  4. The loss of consciousness or capacity was neither foreseen, nor foreseeable.
Marcum v. Hayward, 136 So. 3d 695, 697–98 (Fla. 2d DCA 2014) (internal citations omitted).

"the presumption is reduced to the status of a permissible inference of negligence from which a jury may, but is not required to, find negligence on the part of the rear driver." Birge, 107 So. 3d at 361.

With that in mind, we must determine whether the evidence presented, viewed in the light most favorable to the plaintiffs, could support a reasonable inference made by the jury that Mishali did not lose consciousness or experience a syncopal event prior to the accident. See Marriot Int'l, Inc. v. Perez-Melendez, 855 So. 2d 624, 628 (Fla. 5th DCA 2003) ("[A] motion for directed verdict should be granted only where no view of the evidence, or inferences made therefrom, could support a verdict for the nonmoving party and the trial court determines that no reasonable jury could render a verdict for that party."); see also Evers v. R.J. Reynolds Tobacco Co., 195 So. 3d 1139, 1140 (Fla. 2d DCA 2015) (noting that "[a] party seeking a directed verdict bears a heavy burden").

Mishali sought to rebut the presumption of negligence on his part, as the rear driver, by presenting evidence that he suffered a sudden and unexpected loss of consciousness which led to the collision. In support of this defense, Mishali presented the following testimony to the jury: (1) Mishali's own testimony about how he felt moments prior to the accident; (2) Smitananda's deposition testimony as the sole witness of Mishali's actions

11

before the accident, and (3) Dr. Nedd's expert testimony opining that Mishali had suffered syncope moments before the collision. The jury, as the trier of fact, was tasked with determining whether Mishali's presumption of negligence was overcome by his defense of experiencing a sudden and unexpected loss of consciousness (or syncope) based on the evidence presented at trial. As mentioned earlier, the jury ultimately rejected Mishali's defense and found in favor of the plaintiffs.

The record shows that there was competent substantial evidence presented at trial to support the jury's verdict in favor of the plaintiffs.[3] Therefore, the trial court erred in granting Mishali's post-trial motion for directed verdict. See Frieri v. Capital Inv. Servs., Inc., 194 So. 3d 451, 454 (Fla. 3d DCA 2016) ("[W]e must sustain a jury verdict if it is supported by competent substantial evidence."); Edwards v. Orkin Exterminating Co., 718 So. 2d 881, 883 (Fla. 3d DCA 1998) (same).

As our Supreme Court advised when reviewing a ruling on a motion for new trial:

> A jury's verdict should not be lightly set aside. Our constitution says that the right of trial by jury must remain inviolate. It has long been well settled in this jurisdiction that where the jury has been properly instructed by the Court and the

---

[3] Because there was competent substantial evidence to support the jury's verdict, we need not address the second issue raised by the plaintiffs regarding the trial court's evidentiary rulings.

evidence is conflicting, and the case is one in which a jury of reasonable men could have found the verdict rendered on the evidence submitted to them, a new trial should not be granted. While the legal effect of the evidence is a question of law for the court, the jury is the trier of the facts, and conflicts in the evidence are for the jury to decide. The power of the trial court to grant a motion for new trial should be exercised cautiously, and only after a careful consideration of all the evidence in its most favorable aspect to the party in whose favor the verdict was rendered.

Wolkowsky v. Goodkind, 14 So. 2d 398, 402 (Fla. 1943).

The record before us "supports the jury's weighing of evidence and credibility determinations." Edwards, 718 So. 2d at 883 (citations omitted); Smith v. Brown, 525 So. 2d 868, 870 (Fla. 1988) ("Clearly, it is a jury function to evaluate the credibility of any given witness.").[4]

After a careful examination of the record on appeal and the evidence presented at trial, we cannot agree that the evidence conclusively established that Mishali suffered a sudden and unexpected loss of consciousness, which was neither foreseen nor foreseeable, prior to the

---

[4] "In negligence cases, motions for directed verdict should be treated with special caution because it is the function of the jury to weigh and evaluate the evidence." Graham Cos. v. Amado, 305 So. 3d 572, 577 (Fla. 3d DCA 2020); see also Edwards, 718 So. 2d at 883 ("The power to direct a verdict should be cautiously exercised[.]") (citations omitted). Moreover, "[a] jury is free to weigh the opinion testimony of expert witnesses, and either accept, reject or give that testimony such weight as it deserves considering the witnesses' qualifications, the reasons given by the witness for the opinion expressed, and all the other evidence in the case, including lay testimony." Wald v. Grainger, 64 So. 3d 1201, 1205 (Fla. 2011).

accident. Rather, the jury was presented with conflicting evidence on this very contested issue which the jury ultimately could have resolved in favor of the plaintiffs. See De La Torre v. Crete Carrier Corp., 786 So. 2d 1202, 1203 (Fla. 3d DCA 2001) (noting "there was conflicting evidence regarding skid marks which the jury could have resolved in favor of the defendant").

The jury heard conflicting testimony regarding Mishali's medical history and his actions moments before the collision. At trial, Mishali was asked about a prior answer to an interrogatory in which he denied having any prior medical conditions before the accident. Mishali tried, somewhat unsuccessfully, to explain why he was not forthright about his alleged prior syncope when he was ten years old. The jury also heard that while Mishali claimed to have lost consciousness after he started driving through the school zone, he was, nevertheless, with his eyes open, looking forward, and able to keep control of his car while driving over 30 miles per hour before running a red light at an intersection, and continuing to accelerate for at least a full block before rear ending Lopez's car. There was also conflicting testimony regarding Mishali's driving behavior prior to the crash. Based on Smitananda's testimony, Mishali sped through a school zone and then ran a red light before the collision. Mishali, instead, decisively testified that he was driving 13 miles per hour through the school zone, and he specifically

recalled that because it was a school zone, and he testified you have to drive "a little bit under."

As to the medical expert's testimony, the jury heard conflicting and incomplete testimony from Dr. Nedd based on Mishali's medical history, which gave the jury a reasonable basis to reject his medical testimony. See Wald, 64 So. 3d at 1206 ("[W]hen a medical expert's opinion is predicated on an incomplete or inaccurate medical history, the jury is free to reject the expert medical testimony, even without conflicting medical testimony, if there is conflicting lay testimony.") (citing Easkold v. Rhodes, 614 So. 2d 495, 497–98 (Fla. 1993) (concluding that jury was justified in determining that expert medical testimony was flawed based on the untruthful medical history given to the experts by the plaintiff and her contradictory deposition statements concerning her medical history)). As stated earlier, Smitananda's deposition testimony revealed that Mishali had his eyes open and was looking forward while driving. This testimony directly contradicts Dr. Nedd's testimony regarding a syncope event: "Syncope means that you lose control of your faculties because the brain is not able to achieve or to get enough blood supply or oxygen for a moment . . . it involves a total passing out." The jury was not offered an explanation to understand whether or not a person experiencing syncope could still have his eyes open and maintain full control

15

of a vehicle, like Mishali was moments before the crash. Likewise, Dr. Nedd did not provide a specific medical definition of a "total passing out" for the jury to consider and compare with the testimony regarding Mishali's behavior or alleged symptoms moments before the collision.[5]

Dr. Nedd also admitted that the only information he had about Mishali's prior syncope, when Mishali was ten years old, came directly from Mishali and there was no other corroborating evidence. Dr. Nedd was also asked, based on his review of the hospital records following the crash, whether the doctors at the hospital had conducted any test to diagnose Mishali for syncope. Dr. Nedd answered, "there was nothing that I could find that would have explained the syncope." Additionally, Dr. Nedd's testimony was inconclusive as to whether or not Mishali's alleged syncope prior to the crash was foreseen or foreseeable—an element required to prove the loss of consciousness defense, which the jury did not hear competent substantial evidence on. Lastly, Dr. Nedd was unable to point to any actual physical evidence of Mishali passing out before the impact apart from Mishali's own

---

[5] "Fainted," "passed out," and "lost consciousness" are synonymous. See "Pass," Oxford English Dictionary (3d ed. 2005), ("to pass out" means "to faint; to lose consciousness"). A reasonable person would understand "passed out" or "blacked out" to mean a person becomes unconscious and loses their faculties, such as muscle control which can result in the person falling.

16

account of the events leading up to the crash. Based on this evidence, we conclude that a reasonable jury could have rendered a verdict for the plaintiffs. Fridman, 185 So. 3d at 1227.

Mishali relies on Marcum v. Hayward, 136 So. 3d 695 (Fla. 2d DCA 2014), a case that is similar to the present case but clearly distinguishable. There, the evidence undisputedly and conclusively established that the rear driver, Ms. Marcum, lost consciousness while driving because of a seizure. Ms. Marcum testified that "she felt as though she momentarily blacked out, woke up briefly, and then blacked out again." Id. at 696. A passenger in Ms. Marcum's car offered corroborating testimony that Ms. Marcum had "stated that she felt as though she had blacked out, stated that she did not feel well, asked where they were going, and then she suddenly lost consciousness." Id. That same passenger attempted to stop the vehicle once he realized that Ms. Marcum had lost consciousness. After the impact, the driver who was hit from behind also gave corroborating testimony as to Ms. Marcum's medical emergency by observing that Ms. Marcum was having a seizure. Id.

Under the facts in Marcum, it was undisputed that the rear driver lost consciousness prior to the crash. Here, on the other hand, that fact was disputed, and the record includes facts upon which the jury could have concluded that Mishali neither lost consciousness nor experienced syncope

prior to the collision. For example, Smitananda, the sole passenger in Mishali's car, did not conclusively testify that Mishali lost consciousness while driving. In fact, Smitananda's testimony did not even corroborate Mishali's testimony that he felt unusually hot and weird moments before the crash. Instead, she only testified that Mishali's eyes were open, he was looking forward while accelerating the car, and was unresponsive. Thus, Smitananda offered no corroborating testimony regarding Mishali's symptoms like the passenger in Marcum did. Also, unlike in Marcum, Lopez never testified that he saw Mishali unconscious or experiencing a medical emergency after the collision. Lopez, instead, testified that he saw Mishali laying on the ground in pain and consciously screaming that he was sorry.

On this record, we cannot say that the evidence and testimony presented, when viewed in a light most favorable to the plaintiffs, would have precluded the jury from finding in their favor. The record, instead, shows that the jury reasonably could have rejected Mishali's loss of consciousness or syncope defense and reasonably inferred that Mishali acted negligently by not avoiding the collision.

We reverse the directed verdict and remand to the trial court with directions to reinstate the jury's verdict as to liability, and for further proceedings.

Reversed and remanded with instructions.