# Third District Court of Appeal
## State of Florida

Opinion filed September 30, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1398
Lower Tribunal No. 19-15309
_____

## USAA Casualty Insurance Company,

Appellant,

vs.

## David L. Deehl,

Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Carlos Lopez, Judge.

Law Offices of Charles M - P George and Charles M - P "Chip" George; Law Offices of Athena Thanos, and Craig I. Kartiganer, and Marshall S. Kaufman (Plantation), for appellant.

Mandina & Ginsberg, PLLC, and Marc R. Ginsberg, for appellee.

Before LOGUE, C.J., and FERNANDEZ and LOBREE, JJ.

LOGUE, C.J.

USAA Casualty Insurance Company, defendant below, appeals the trial court's entry of three orders in a personal injury action brought by plaintiff David Deehl to recover economic and non-economic damages, pursuant to his uninsured motorist policy. Specifically, USAA challenges the trial court's Order Denying USAA's Motion for Summary Judgment, Order Granting Plaintiff's Renewed Motion for Directed Verdict on Comparative Fault, and Order of New Trial Based on Defendant USAA's Rejection of Additur of Past and Future Non-Economic Damages. Because we find no error with the orders on appeal, we affirm.

## BACKGROUND

On July 17, 2016, David Deehl and Yelena Prosvirnova[1] were riding bicycles northbound on US-1 near the entrance of Burt Reynolds State Park, when a phantom vehicle (obstructed by a large park sign) exited the park, without stopping for the flashing red traffic light. Prosvirnova swerved into Deehl's path to avoid the phantom vehicle. Deehl, following Prosvirnova, attempted to stop, but his front tire collided with Prosvirnova's rear-tire, causing him to fall onto his ankle and sustain a serious and permanent ankle injury, necessitating extensive medical attention.

---

[1] Deehl and Prosvirnova married after these legal proceedings commenced. We note that Prosvirnova's surname is now Deehl.

2

Deehl filed a claim with USAA pursuant to his uninsured motorist policy, which claim was denied. Shortly thereafter, Deehl filed suit.[2]

Prior to trial, USAA argued that it was entitled to summary judgment as to fault under two theories. First, under the "rear-end presumption," because the only inference to be drawn (since Deehl rear-ended Prosvirnova) was that Deehl was the sole, proximate cause of his injuries. Second, under the law of the case doctrine, alleging that, this Court's affirmance in USAA v. Prosvirnova, 337 So. 3d 855 (Fla. 3d DCA 2022), which absolved Prosvirnova of any fault, implicitly held that the only inference left to be drawn was that Deehl was negligent. USAA's motion was denied. The case proceeded to trial.

## I.    THE TRIAL

Over a three-day jury trial, Deehl presented the testimony of fact and expert witnesses, including: (1) treating orthopedic surgeon, Dr. Thomas San Giovani; (2) girlfriend-now-wife, Prosvirnova; (3) longtime friend, Dr. Karl Casky; (4) physical therapist, Dr. Daniel De Leon; (5) longtime colleague,

---

[2] USAA cited Prosvirnova's negligence as its reason for denial. Given that denial, Deehl named USAA, and Prosvirnova, as defendants. The trial court later granted summary judgment in favor of Prosvirnova as to fault, which this Court affirmed on appeal. USAA v. Prosvirnova, 337 So. 3d 855 (Fla. 3d DCA 2022).

Maria Benitez Snyder; (6) bicycle safety and operation expert, Peter Flucke; and (7) himself.

### a. Evidence of Fault

The parties stipulated that the intersection where the incident occurred was governed by a flashing red-and-yellow traffic light. Deehl was riding his bicycle northbound down US-1 on the left side of a marked bicycle lane. Prosvirnova, as lead bicyclist, was five-to-ten feet ahead. They came to an intersection at the entrance/exit of the park, which was obstructed from view by a large park sign. They had the legal right of way. As they approached the intersection, a phantom vehicle suddenly came into view and exited without deferring to the flashing light or Prosvirnova and Deehl. To avoid a collision, Prosvirnova suddenly braked and swerved left, into Deehl's path. Deehl braked to stop, but his front tire lightly impacted Prosvirnova's rear-tire in the process and he fell onto his ankle on the pavement.

Bicycle safety and operation expert, Peter Flucke, testified that "Deehl was riding his bicycle appropriately [and] [t]he emergent situation is what caused the crash." Flucke would not have advised Deehl to avoid Prosvirnova by swerving the other way, because "[t]o either go to the left or to the right of the bicycle would have potentially put him in conflict with a passing motor vehicle. The severity of the crash would have been typically

4

much greater had he been hit by a car." Flucke opined that neither the accident nor injury were caused by Deehl. USAA presented no evidence to contradict this testimony; but rather argued Deehl, as the rear-bicyclist, should been able to stop in time to avoid the collision.

### b. Evidence of Past Non-Economic Damages

With respect to Deehl's claim for past non-economic damages, or pain and suffering, the uncontroverted evidence heard by the jury was that Deehl suffered severe orthopedic injuries to his lower extremity, beginning with a fracture of his tibia, spiral fracture of his fibula, tri-malleolar fractures of the ankle joint bones, a total ankle joint dislocation, as well as disruptions to the ligaments, tendons, and cartilage, which can never be undone. A recording of the 911 call revealed Deehl screaming in agonizing pain and expressing concern that he might bleed out due to certain medications he was prescribed. His pain level was such that he was administered fentanyl, which provided little relief.

Deehl was transported to a local Jupiter hospital, where he underwent a closed reduction under general anesthesia, meaning his fractured bones were pulled apart and attempted to be positioned in anatomic alignment. Deehl was hesitant to have the procedure performed by a surgeon he did not know, but was in such tremendous pain, that he could not imagine being

5

transported back to Miami, and acquiesced. Later, Deehl underwent an open reduction orthopedic surgery utilizing internal fixation by insertion of titanium seven screws and a plate to position and secure the broken bones. Upon his discharge two days later, Deehl returned home, where he remained bed ridden.

Two weeks later, Deehl had his first follow-up visit with Dr. Thomas San Giovani, a board-certified orthopedic foot-and-ankle surgeon. Deehl was informed that the surgery had to be redone, because his bones were not in proper anatomic alignment and a piece of his tibia was loose and moving in the joint space.

One month after sustaining the injury, Deehl underwent a third surgery, this one known as an open reduction with internal fixation revision, whereby the long screw was removed, the bones were realigned, and two more screws were inserted to maintain the bones in the proper alignment and to secure the loose bone fragment. This caused Deehl significant fear and anxiety before and after the surgery, and the ensuing recovery. Deehl was bedridden and wheelchair bound for months.

Following his third surgery, Deehl underwent six years of extensive physical therapy. Notwithstanding, Deehl developed a significant limp, continued to experience pain and inflammation, suffered mental anguish,

and developed post-traumatic arthritis (a progressive condition in which the cartilage of the joint deteriorates).

The testimony of Prosvirnova, several of Deehl's longtime friends, and himself, revealed that his continued pain and suffering since the injury had caused a negative shift in his overall attitude and demeanor. Though he still had hope, the impact of the pain, suffering, and limitations he endured in the aftermath of the injury had a significant impact on his life.

USAA did not have Deehl examined by an orthopedic surgeon of its choice, or otherwise challenge the evidence Deehl presented as to his past pain and suffering. Instead, USAA presented the testimony of a cardiologist, who was retained to "determine what was the relative progression of [Deehl's preexisting medical conditions] after the incident, relative to what was already there before the incident." USAA's cardiologist opined that, with respect to the preexisting medical conditions, the injury had had no impact. USAA also questioned Deehl about certain travels, particularly vacation cruises he had taken with Prosvirnova, in the years after he sustained the injury.

### c. Evidence of Future Non-Economic Damages

With respect to Deehl's claim for future non-economic damages, Dr. San Giovani testified that Deehl's worsening condition would require a total

ankle replacement implant in the near future. A total ankle replacement is a significant surgical event where the ankle is to be surgically excised, and a titanium ankle joint is inserted and fixated in its place. It is a surgery that carries significant risks and involves up to two years of painful and challenging rehabilitation. The ankle prosthetic has a relatively short time in use, or "shelf life," before it begins to fail. The surgery, hospitalization, anesthesia, physical therapy, and rehabilitation cost $250,000. Deehl's physical therapist, who has worked with patients recovering from total ankle replacements testified: "You wouldn't want to have this surgery, let's put it that way." Without the surgery, however, Deehl will continue to experience worsening symptoms and effects related to his post-traumatic arthritis, including increasing pain, and mobility that is both limited and decreasing. USAA did not present any evidence to contradict that presented by Deehl.

Deehl moved for directed verdict as to fault, which motion was denied. During closing argument, Deehl suggested a non-economic damage award in the range of $2 to $4 million, arrived at by using one of two methods - "per diem" or "event." USAA, on the other hand, iterated that "upon experience of doing this in the past, [the non-economic damage award] numbers for the past should be at $100,000 and for the future at $50,000."

The jury awarded Deehl damages totaling $500,000. On the verdict form, it apportioned 30% fault to Deehl and 70% fault to the Unknown Driver; and awarded Deehl: (1) $250,000 in future economic damages; (2) $125,000 in past non-economic damages; and (3) $125,000 in future non-economic damages.

## II.  POST-TRIAL

Post-trial, Deehl renewed his motion for a directed verdict, now judgment notwithstanding the verdict, as to his comparative fault, which motion the trial court granted. Deehl also moved for additur as to the non-economic damage award, which motion the trial court granted. The trial court increased the past and future non-economic damages awards by the amount Deehl requested: $625,000, respectively, thereby increasing the award to (1) $750,000 in past non-economic damages; and (2) $750,000 in future non-economic damages. USAA rejected the additur, and the trial court ordered a new trial on non-economic damages, only. The trial court then entered partial final judgment. This appeal followed.

## STANDARDS OF REVIEW

A trial court's order granting a new trial on damages after a party has rejected an additur is reviewed for a clear abuse of discretion. ITT Hartford Ins. Co. v. Owens, 816 So. 2d 572, 575 (Fla. 2002); see also Manheim

9

Auctions Gov't Servs., Inc. v. Mejia, 930 So. 2d 657, 659 (Fla. 3d DCA 2006); Canakaris v. Canakaris, 382 So. 2d 1197, 1203 (Fla. 1980) ("If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion.").

The standard of review of an order granting a renewed motion for directed verdict is de novo. See Contreras v. U.S. Sec. Ins. Co., 927 So. 2d 16, 20 (Fla. 4th DCA 2006).

The trial court's ruling on a motion for summary judgment presents a pure question of law, which this Court reviews de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

## DISCUSSION

### I. ADDITUR

Florida law authorizes a trial court to remedy an inadequate jury verdict by increasing the award of damages through additur. §§ 768.043(2), 768.74(5), Fla. Stats.; see also Fla. R. Civ. P. 1.530(h). To determine whether additur is appropriate, the trial court must consider whether the award is inadequate in light of the facts and circumstances presented to the trier of fact. The statute sets forth specific criteria to be considered, therein.

The record before us supports the trial court's determination that additur was appropriate. In his motion for additur, Deehl argued the non-economic damages awards were inadequate.[3] Following a hearing, the trial court issued a detailed eleven-page order, in which it carefully reviewed and considered the evidence presented to the jury, as described above, and under the statutorily required criteria set forth in sections 768.043(2), 768.74(5), Florida Statutes.

In its well-reasoned order, issued after consideration of the facts and circumstances in light of the evidence presented to the trier of fact, the trial court, concluded that "these low amounts 'shock the conscience,'" and were "clearly inadequate," as there was "no conflicting or contradicting evidence[,]"[4] and ordered:

---

[3] In addition to the evidence, and consistent with the amount requested, Deehl submitted verdicts awards from cases involving similar injuries in which non-economic awards were imposed or affirmed.

[4] Notably, a major theme of USAA's case at trial was that Deehl's luxurious lifestyle – such as his engagement to Prosvirnova, and the details of his travels, including several cruises taken in the years following his injury – could provide an appropriate reason to award him less damages than proved. The trial court noted that while the cause of the low verdict was irrelevant to whether it was inadequate, it attributed the low verdict to this "wholly improper consideration." It rejected USAA's argument that it amounted to conflicting evidence sufficient to justify the award. While travel may impact damages as to the loss of enjoyment of life, it explained, Deehl's past and future pain and suffering existed, regardless. "That the jury may

11

Here the Court finds that based on the substantial and uncontradicted evidence relating to non-economic damage "it clearly appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable," "the amounts awarded do not bear a reasonable relation to the amount of damages proved and the injury suffered;" and these amounts are not supported by the substantial evidence of past non-economic damages." Florida Statutes Sections 768.043 and 768.74 (2023).

. . . .

In accord with this Court's responsibility as stated in the statutes, based on a consideration of the evidence, the fact that the evidence was not conflicting, that the evidence of bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience or loss of capacity for the enjoyment of life was proven to be substantial and significant and that the amounts awarded by the jury are clearly inadequate, the Court orders an additur of $625,000 for past non-economic damages for a total past non-economic award of $750,000 and an additur of $625,000 for future non-economic damages for a total future non-economic award of $750,000.

Because, as here, reasonable men could differ as to the propriety of the action taken by the trial court, it cannot be said that the trial court's action in finding the jury verdict inadequate and awarding additur was unreasonable

---

have made these shockingly low awards due to [Deehl's] perceived wealth . . . is a wholly improper consideration." We agree.

and there can be no finding of an abuse of discretion. <u>Canakaris</u>, 382 So. 2d at 1203. We, therefore, affirm the trial court's additur award.

## II. COMPARATIVE FAULT

We turn next to USAA's argument that the trial court erred when it entered judgment notwithstanding the verdict in favor of Deehl on comparative fault. "[A]n appellate court reviewing the grant of a directed verdict must view the evidence and all inferences of fact in the light most favorable to the nonmoving party, and can affirm a directed verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party." <u>Banco Espirito Santo Int'l, Ltd. v. BDO, Int'l, B.V.</u>, 979 So. 2d 1030, 1032 (Fla. 3d DCA 2008) (quoting <u>Owens v. Publix Supermarkets, Inc.</u>, 802 So. 2d 315, 329 (Fla. 2001)).

We find no error with the trial court's order. The uncontroverted evidence, in particular, the testimony of Deehl and Prosvirnova about the details of the incident, and the expert testimony of Flucke, established that Deehl was not at fault, but rather conducted himself according to the law. Because we find no error with the trial court's order granting judgment notwithstanding the verdict in favor of Deehl on comparative fault, we affirm.

## III. USAA'S MOTION FOR SUMMARY JUDGMENT

Turning to the remaining issue on appeal, we find no error in the trial court's order denying USAA's motion for summary judgment under either the "rear-end presumption" or law of the case doctrine, as argued by USAA, because the evidence was such that a reasonable jury could have returned a verdict for Deehl. See Clampitt v. D.J. Spencer Sales, 786 So. 2d 570, 572-73 (Fla. 2001) ("The rebuttable presumption of negligence . . . arises out of necessity in cases where the lead driver sues the rear driver. The presumption bears only upon the causal negligence of the rear driver."); Prosvirnova, 337 So. 3d at 855 (affirming summary judgment as to Prosvirnova's liability).

Affirmed.